My name is Taryn Gartner-Elaie. I represent Herb Verbeek in this lawsuit. Accompanying me is Mr. James Cruz. He represents Brett Verbeek. Mr. Cruz is also defense counsel in the underlying suit that relates to the case that's before the court. We have two issues before the court, the first of which is Markel's duty to defend the Verbeeks in an underlying lawsuit under a director's and officer's liability policy issued by Markel to Colorstar Growers. The second is Markel's duty to indemnify the Verbeeks in that same lawsuit. Colorstar Growers is now defunct. The Verbeeks are former officers and directors of Colorstar and insured under Markel's policy. So I want to first address- Because there are other things growing in Colorado these days that we just- They also have other- They have points of that as in some other seasonal plans as well. So with regard to Markel's duty to defend, of course, I know the court has spoken extensively on the standards for the duty to defend. It's much broader than the duty to indemnify. And what we know is that the duty to defend is based solely on what the pleadings allege and only what the pleadings allege. The allegations are to be taken as true. There cannot be an inquiry into the truth or falsehood of the allegations that are made. And if there's any doubt as to whether or not there's a duty to defend, that doubt must be resolved in favor of the insured. In cases involving policy exclusions like this one, Markel bears the burden to show that 100 percent of the allegations that are made are included within the purview of the exclusion, unambiguously excluded as the standard. All of the facts must be alleged to support the exclusion that's asserted. The Verbeek's, on the other hand, have a very minimal burden to show that a single allegation, just one, a single allegation taken as true is potentially covered under the policy. And again, all doubts about that have to be resolved in favor of the insured. In this case, Markel has asserted that a policy exclusion for loss on account of claims or suits brought by creditors of ColorStar, suing in a creditor's capacity as such, applies to the underlying lawsuit. The underlying lawsuit alleges that the Verbeek's and other persons who are not parties to this lawsuit negligently and intentionally misrepresented ColorStar's financial condition in the course of restructuring ColorStar's debt. So what's the issue here is whether or not the plaintiffs in the underlying lawsuit are creditors of ColorStar, and if so, whether or not they have sued the Verbeek's solely in their capacity as creditors of ColorStar. And the answer to that question is clearly, both of those pleadings, there are four plaintiffs in the underlying lawsuit. You have MCG, Solutions Capital, Regions Bank, and Comerica Bank. That's it. Undisputedly, Regions, Solutions, and Comerica loaned money to ColorStar. However, the pleadings do not allege that MCG loaned any money to ColorStar. In fact, on the record, pages 599 and 600, the plaintiffs have not the pleadings allege that Solutions Capital was the sole lender of the junior loan. The pleadings, same record reference, allege that MCG was an administrative agent for Solutions Capital and that MCG invested in Solutions Capital. The pleadings specifically allege that MCG was induced to invest in a loan by the misrepresentations made by the Verbeek's and other parties. And importantly, the pleadings specifically allege that MCG was damaged by its investment in Solutions Capital, which is found on page 630 and 620 of the record on appeal. So the district court's ruling was erroneous because the district court failed to take these allegations as true as required under the Eight Corners Rule and instead made an inquiry as to whether or not the United States Supreme Court's decision in U.S. v. Congress is how we tended to show whether MCG was actually an investor or a creditor in ColorStar. And this violates one of the fundamental tenets of the Eight Corners Rule, which is that the carrier has an obligation to defend regardless of whether the allegations made are fraudulent, false, or groundless. So the district court could not and should not have inquired as to whether or not MCG was an investor or a creditor because that is a fact, not a theory of liability. Well, the label appears of subordinated credit agreement with ColorStar and MCG and Capital and Solutions. Is that something that is in, first, is that accurate, but is that in the pleadings, in the complaint at all, or is that something that came out subsequent to the complaint? The pleadings, and this is on page 574 of the Record on Appeal, the pleadings filed by MCG define MCG Capital to be jointly Solutions Capital and MCG. The pleadings also allege that Solutions Capital was the sole lender. The pleadings also allege that MCG was induced to enter into the loan and related agreements, and the pleadings then reference the subordinated credit agreement. So the pleadings are not clear, which is why the rubriques get the benefit of the doubt. The district court cannot connect those dots and make assumptions about who are parties to what documents. There's a subordinated credit agreement referred to specifically in the pleadings and other documents, other loan documents specifically referenced in the pleadings. So, there are other reasons why the creditor exclusion does not apply to the allegations made in the underlying pleadings, but that is the primary reason. On that point alone, the district court's decision on the duty to defend should be reversed and rendered in favor of the rubriques. There were creditors, weren't they, I mean, that brought this? There were creditors that were trying to recover for a loan? There are four parties to the underlying litigation, so Regions, Solutions, and Comerica are alleged to be lenders. MCG is not alleged to be a lender, and in the pleadings filed by MCG, Solutions Capital is alleged in print to be the sole lender of the junior loan, meaning that MCG cannot be a lender of the junior loan. The next point I want to address is Markell's duty to indemnify. As the court knows, the duty to defend and indemnify are distinct, and the duty to indemnify is not generally right for adjudication until the underlying suit is completely resolved and liability is fully adjudicated. The district court entered summary judgment sua sponte under Rule 56 without notice to the verbiques. Markell, although it had the opportunity to file a Griffin motion or a motion for summary judgment on the duty to indemnify, did not. But the point is that it was harmful error to the verbiques. It was prejudicial to the verbiques because the verbiques were prohibited from introducing evidence to the district court from the bankruptcy proceedings, indicating that all of the parties to the underlying litigation, Regions, the three lenders, Solutions Capital, and Comerica, were stripped of their hand-down order that was entered in the bankruptcy proceedings. And had the verbiques been given the opportunity to introduce that evidence to the court, they could have introduced affidavits from the bankruptcy trustee or the lawyers that were involved, the order itself and other pleadings in the bankruptcy proceedings, and perhaps even the documents that would shed light on in what capacity Markell could, or Solutions and Regions, MCG, and Comerica could recover against the verbiques. So I think I have a little bit of time left. I'm going to give you back that time unless you have some further questions to make. Let me just make sure I understand your argument on the first point. Is your argument that . . . I thought I recalled that the magistrate judge and the district court looked to the plaintiff's conduct, fraud, et cetera, et cetera, and that that was emanating damages from a creditor position, and that that was what the stream of thinking below in terms of this investor versus creditor. So I heard you say, well, part of the error was the district court did not construe the pleadings, and the like, most favorable, et cetera. But just help me understand . . . I mean, I read the exclusion, and Judge Prado kind of asked you, and it seems that you were saying like they couldn't have been a creditor. They could only have been an investor, and that the district court was required to construe the pleadings in that light. Maybe I'm misunderstanding because you got the Louisiana lawyer here, the Mississippi lawyer here, and this is the Texas lawyer. So for me, just help me understand how that analysis works, looking at that lawsuit. Do you follow what I'm saying? I do like what you're saying. I'm just trying to make sure I'm not misunderstanding you in terms of the investor-creditor piece that . . . in other words, the party could be both an investor and a creditor, and so okay, in which capacity are they making a claim? As an investor, as a creditor, so where the argument is that, well, you've got to construe the language in our favor. We say you're an investor, therefore you go with that, versus the district court can't look at whatever the underlying nature of the dispute to say they're suing for damages, blah-di-blah-di-blah-di. They're not seeking, as an investor, quote, to recoup. Normally we say with an investor, you know, somebody's trying to recoup the benefit of their investment, dividends, etc., and that I understood the court below to see the full analysis is there's no indicators of typical investor, i.e., recouping. This looks like a straight-up tort claim . . . well, I shouldn't say tort claim, but a damage claim, a claim emanating from the fraud, and so on and so forth. The question is more convoluted than I know your answer will be, but just help me understand why you're saying all the court should have been doing is just looking straight up at the pleadings, and if there's any doubt that they could have been an investor or not, that the court was obliged to say investor, and therefore say that the exclusion doesn't apply. You see where I'm headed? I do, and there's . . . I have several parts to that answer. So the first . . . Well, they already understand it, so just help me. Okay. So the first part of that is that, again, the duty to defend is based solely on the pleadings, and the pleadings here allege that Solutions Capital was the sole lender of the prevailing Supreme Court . . . Texas Supreme Court authority. That allegation has to be taken as true. The duty to defend . . . Markell has a duty to defend even if that allegation is false, fraudulent, or groundless. At Markell's urging, the district court looked to the quote-unquote origin of damages in reaching the conclusion that, yeah, this really looks like a creditor claim, not an investor claim. But the district court is not allowed to do that because of the specific allegations in the pleading. The origin of damages analysis directs the court to look at whether the facts pleaded support the cause of action alleged, not to look to the damages. And so that's the distinction, is that the court took the claim that MCG was an investor and said that's a theory of liability. Let's look at the case law and see if they really are an investor or a creditor. And the most important point is that this policy exclusion applies only to claims brought by creditors of the company in the creditor capacity as such. A creditor, that term must be given its plain and ordinary meaning. It is not the same thing as an investor. The term investor is not used in the policy exclusion at all. So to the extent that MCG brought claims as a creditor and an investor, the investor claims fall outside of the purview of the exclusion. Does that answer your question? I tell you, you answered me way more succinctly than I asked that awkward question, but you were spot on in answering. I'm not saying whether you win, but you definitely answered the question I was trying to ask. So I appreciate it, because it's that origin of damages piece in exact . . . and I know counsel's office is going to address it, but I just wanted to make sure that I was understanding what you were arguing was the error below by the district court, and you just helped me. If you need an example of that, I'm happy to provide an example of that distinction. No, no, no. I'm good. I got it. Even in Louisiana, though I may be, I got it. No, thank you. That was helpful. All right. Let's see. Are we back up, or . . . We got a second argument on that side, right? Okay. Mr. Cruz. I apologize if I took your thunder in my question. I don't The exclusion in this case deals with a creditor of the company and the creditor's capacity as such. Here, number one, MCG is not a creditor of the company. The facts, as pled, state that MCG was an administrative agent. It did not loan a penny. Solutions was the, quote, sole lender, unquote. So what were the damages being sought? The damages being sought are the amount of Solutions' damages and MCG's damages. In the pleadings, it states that MCG and Solutions combined have been damaged by at least $13.5 million. But that does not, it does not break out what MCG's damages are as a non-creditor versus Solutions as a sole lender. But some of it was money lent, that they were trying to recover money that was lent? I mean, that's not just damages, total damages. Some of it is to try to recover a defaulted loan? If you go back and . . . Yes, I mean, potentially, if you go back and trace through history, you know, where did that come from? You know, certainly Solutions could have come from that. MCG invested. They, there is, there can be no reading of the pleading that says that MCG is a creditor of Colorstar. They don't even pass the first part of the question. A creditor of Colorstar, they don't pass because the facts clearly say they weren't a lender, although Solutions could assign the note or any debt in there, they have not done so. And I mean, that is straight out of the pleading. And then the pleadings state numerous times that MCG invested in the note, or I'm sorry, invested in the loan, invested in Solutions. So we know from the facts that MCG did not loan money to Colorstar, and MCG invested somehow in the note, or in the debt. So they can't be a creditor. They, it doesn't, just because it doesn't say how they invested doesn't mean that somehow we, that they're not a creditor. We have to take the facts as true, and the facts as pled clearly state that Solutions is the sole lender. The note, or the note in the loan, the indebtedness was not assigned. So from that, from that we look and say, they didn't pass the first test. They're not a creditor. Looking, you know, if we, the origin of the analysis, but it's also a red herring because they can't pass that first test. You have to take these allegations as true. And they say it, I mean, to read the actual statement in the pleadings, Clerk's Record 600, open quote, Solutions is the sole junior lender, close quote. Pursuant to the subordinated credit agreement, comma, the open quote, junior loan can be transferred by assignment, but Solutions has not done so at this time, close quote. Then you have numerous allegations that MCG invested. So we can't make a leap, a leap somehow that they're a creditor because they're not. With respect to the second part of the analysis, you know, the MCG, this MCG has, they had a chance to write this policy and they wrote it. They got to choose the words, the phrases. They could have excluded certain things. They could have excluded misrepresentations in connection with the extension of a credit or the purchase of a debt instrument, which is actually the language that was in a policy, another policy, that En-RAID, Bank of Louisiana, Kenwood. They chose instead to limit it to a creditor of the company and the creditor's capacity as such. We know, in this case, that they don't even pass the first test. The second test, we haven't even gotten into. I can tell you, they don't pass that test either, and I'd be happy to go through it, but, I mean, you can't get to number one. There's no real reason to get to number two. All right. I think we have your argument, and you and your co-counsel have reserved some rebuttal time. Yes, sir. Let's hear from Markle American. Thank you. All right, counsel, I wouldn't even attempt to butcher your name, so tell me how you pronounce it. Well, your honor, there's a split of authority. My mother says Wajahowski, and my father says Wajahowski. So, either one. One leaves the sea silent, the other one puts it in. Will you accept the pronunciation of counsel? Wajahowski, your honor. Thank you. May it please this honorable court. I want to continue down the road in which counsel for Beeks left off, and that is, who were these plaintiffs in the underlying case, and what were they suing for, and then secondly address the origin of damages analysis. Who are these plaintiffs? They've come before this court, and they've indicated that MCG in no way, shape, or form was suing in the capacity as a creditor, but if the court will only look to the record at 633 and 634 through 635, in their claim for the damages, they specifically say the MCG plaintiffs, the MCG plaintiffs characterized themselves and defined themselves in that in their pleading that included both MCG and solutions capital. And what do they say? They said that they had been, quote, by entering into subordinated credit agreement and by loaning ColorStar $13.5 million that will not be recovered. Then they go on to say, and that they are, quote, entitled to damages from defendants of at least $13.5 million. That's at page 633 of the record. Page 634 and 635 make the exact same pleading allegation. And not only is that set out in my brief, but at the beginning of their brief, the Verbeeks talk about the capacity clearly in which all these plaintiffs were suing. On page 3 of their brief, and they cite to the record, they say that the Verbeeks were sued in two consolidated lawsuits by Regions Bank, CoAmerica, Solution Capital, MCG Capital, and here's a quote from the brief. Each of whom alleged the Verbeeks negligently, recklessly, or intentionally misrepresented ColorStar's financial condition as a means of what? They say, quote, securing the $35 million junior loan issued by Regions and the $13.5 million junior loan facility. And to come off and say that because the Verbeeks, throughout their pleading, address the loan, MCG Capital, as loaning money in one place, and then in their pleading MCG Capital characterizes its participation as an investment is merely using the term loan and investment synonymously. Because what is an investment? An investment can be many things. It can be your traditional buying of stock where you could lose your principal. It could be placing money in mutual funds, which is an indirect purchase of stock, which you can lose your principal. Or an investment can be just like it was pled in this case, placing money into a credit facility as MCG pled. And that money in the credit facility created the junior loan, which then was bundled with the senior loan provided by Regions, and then all of it together was loan to Colorstar. None of these plaintiffs would have sued the Verbeeks had they not provided these loans. Look through the pleading. What is the only reasonable construction that can be provided in these pleadings, which combined use the word loan 218 times to describe these transactions? Then look at the origin of the damages claimed. I will respectfully disagree with the Verbeeks that the origin of damage test, when they say it is not the test, that is absolutely and positively an inaccurate and incorrect statement of the law. Just as Southwood may recall, sitting in the same place about five years ago, I was here on a case, Evanston v. Legacy of Life. And in Evanston v. Legacy of Life, the court could not come to a determination of how Texas law would interpret a certain policy provision as applied to human remains, tissues, and organs, so it certified it to the Texas Supreme Court. And the Texas Supreme Court answered the certified questions, which this court then later adopted in its published opinion. And in Legacy of Life, the Texas Supreme Court tells us that the test is, you look at the factual allegations that give rise to the origin of the damages being claimed when you're doing your duty to defend analysis. Now, another thing which you have to do is disregard how MCG Capital, if it's calling itself an investor and it made an investment, I will say factually when you look at how it invested, it invested as a loan. But if the Verbeeks want to sit here and try to say they used the word investment, MCG Capital, and it was an investment and not a loan, well, saying you invested without looking at the facts behind the investment and construing the word invested maybe in its other context of possibly buying of stock or mutual funds, you're coming to the wrong conclusion. And this court does not have to accept the word investment on its face. As this court has indicated in Admiral v. Ford, that you look past what someone calls something in a pleading if it just doesn't make sense, and you look towards what it really is, what are the facts that are giving rise to the conclusion of investment here. In Admiral, what this court was looking at was a professional liability policy where some strange pleading said, well, the defendants who were not engaged in professional services, trying to circumvent it to get to the GL policy, did X, Y, and Z. And this court said, no, you don't accept that pleading allegation. You look at what the defendants really were alleged to have engaged in. Same with legacy of life. In that case, the underlying plaintiff asserted that her mom's tissues and organs were property of the estate in an effort to trigger property damage coverage under the Evanston policy. And this court found when it adopted the Texas Supreme Court's interpretation and holding that, no, you do not look at it being called property and have to take that as true. You have to look at the underlying factual vehemence which gave rise to this conclusion. Same here. Look at the— Were there any—in the pleadings, were there any damages sought beyond recovery of the loan? Absolutely not, Justice Prado, and that is an excellent question, and that goes to the heart of the capacity. Each one of these creditors in the underlying litigation specifically set out what they loaned, and then you look at every legal theory pled, and a legal theory has to include, you know, duty, breach, and damages. So the element of the damages being sought by each and every one of these individual plaintiffs in the underlying litigation was the exact amount of loan principal that they each provided to ColorStar, whether it was through the senior loan or through the junior loan, that combined to create this credit facility. And when you go and you look at these underlying pleading allegations and you use the everyday ordinary definitions, which you should do since the policy doesn't define creditor, let's look at what creditors are. Creditors are merely entities or individuals that are owed something, according to Blacks, Merriam-Webster, and online financial and transactional dictionaries. And here they even talk about what an investment is in the ordinary everyday uses of that term. Investments can be various things, and the definition of one of them includes a loan. An investment is merely putting out cash or something and expecting a return. And what was the return on this, quote, investment, this loan? It was interest. They even say that in their pleading. So just to say it's an investment, an investment has numerous different categories, one of them being a loan, and throughout this pleading, the MCG capital solutions plaintiffs say our investment was a loan. Now, administrative agent. Let's talk about the administrative agent. Read the context in which MCG talks about it being an administrative agent. It talks about it in the context of the credit facility, that it was administering the loan. Well, it doesn't make any pleading allegation that anything that the Verbeeks did caused them independent damages as an administrative agent. The reference to the administrative agent function of MCG capital was informational only. It doesn't seek any damages in its capacity as an administrative agent. And when you read it, you can see that, I think it actually does, I think in their administrative agency capacity, in one of the pleadings, it talks about how it had claims against CoAmerica because it was supposed to get fees to be an administrative agent, and it was seeking those fees from CoAmerica in that capacity. But as to the Verbeeks, CoAmerica is not an insured under this policy, so we can't look at any of the claims that may be asserted by and between these creditors themselves. You have to look at the claims being asserted by the creditors against the insured, and it's only in their capacity as creditors of the company. Really and truly, if the Verbeeks made these misrepresentations and for some reason these entities, MCG Capital Solutions, CoAmerica, and the like, never made the loan, never put out this principle, you would never have the damages. So what is the origin of the damages? It's these loans that we're talking about. This particular exclusion, neither side has been able to get any guidance from any appellate court in the United States about what it means, what it says, and what it does. The closest that we've come to was a district court case here in Louisiana that both sides talked about, the Kenwin Shops case, and that exclusion was a little differently worded, and the court there held it didn't apply to those circumstances. But what is very insightful in the Kenwin case is really when the court talked about that exclusion not applying in that case, it gave an example of when a creditor exclusion would apply, and, my gosh, that example is on all fours with what we have here. They held the exclusion is to apply to cases where you have bondholders who are considered creditors of the corporation, the bondholders sue the directors for some alleged wrongful act which resulted in the bonds being worthless. Well, what do we have here? We have lenders, i.e., who are considered creditors of the corporation Colorstar, and the lenders here sue the directors, the verbiques, alleging wrongful acts which resulted in the loans being worthless. That was the situation in which the Kenwin court said that your creditor exclusion applies. Jumping forward to the sua sponte granting of the summary judgment, I will strongly concede, because it is without contest that the district court below did not give 10 days of notice, but the standard of review is harmless error, and applying the harmless error standard to this case, what do you have to do? You have to look and see that if on appeal was some evidence presented in the appellate record which would make this court believe you could have defeated the duty to indemnify. Well, we've got a couple of issues here why they cannot meet that standard and overcome that hurdle. First of all, we don't really even need different evidence because the district court, in addressing the sua sponte summary judgment granting, indicated and cited the Farmers Texas Mutual case v. Griffith, and the reasoning is, and it's applicable here, it says if you have the same reasons that negate the duty to defend and the duty to indemnify, you can rule on the duty to indemnify. So it's the same reasons, it's the same facts, and the district court was looking at the facts before it and said under these facts, no matter what happens, since all of these underlying plaintiffs are suing solely in their capacity as a predator, there's never going to be a duty to indemnify. So the facts were already there. Well, what the Verbeeks have presented in their brief and tried to say here's the additional evidence which we would have offered is solely some findings in fact and conclusions of law from a different case, namely the Colorstar bankruptcy case. This court has clearly said that type of evidence, one, cannot be considered, and two, since it cannot be considered, it cannot raise a fact issue in a summary judgment proceeding such as this. And that was in the RI restructuring case as well as the Liberty Mutual case cited in my brief. RI restructuring is a 2012 decision, and then it relied upon and referenced the Liberty Mutual case, which was specifically a case involving findings of fact and conclusions of law from a different proceeding. The only thing that that evidence raises and you can take judicial notice of was there were findings of fact and conclusions of law issued by the bankruptcy court. That's the only way it can be considered. However, the rule of law is that whatever the findings of fact were cannot be considered as facts in this case, that it is improper to take judicial notice of them as being truthful facts. And without facts, you cannot raise a genuine issue of material fact. Therefore, we had harmless error by the sua sponte granting of summary judgment without 10 days' notice on the question of the duty to indemnify. Unless this honorable court has any other issues for which it would like me to address, I will cede the rest of my time and give it back. Thank you. Thank you, sir. So I want to first address the damages issue. On page 599 of the record, MCG alleges that MCG viewed themselves, MCG Capital viewed themselves, which is both, again, jointly defined as MCG and Solutions Capital, so you cannot separate these parties out and determine which party is being placed into what bucket, and therefore we get the benefit of the doubt on that. But the pleadings allege that MCG Capital viewed themselves as investors in the credit facility transaction and were motivated to enter into the subordinated credit agreement by the valuable return on investment, including interest. So what Markell wants you to do is assume that that means the loan plus interest and that's it, and that is not permissible under the Eight Corners Rule. All inferences have to be made in favor of coverage. The pleadings have to be liberally construed. So what other damages would there be besides recovery of the loan and the interest? Well, MCG specifically alleges that it was damaged by the amount of its investment in the junior loan. So it calls that an investment. We don't know how much that MCG loaned to Solutions Capital. It could have done part of it or all of it. The pleadings are not clear on that, and we get the benefit of the doubt on that. But the pleadings also allege specifically that MCG was also granted a security interest in real estate and were given deeds of trust. So it is possible that MCG could seek to recover on the or to foreclose on the property on which it was granted a deed of trust. I mean, I get the construing the pleadings, but that just seems like a stretch. I mean, it just seems like you're really trying to put distance between all these claims concerning the money, the 6.4, and you want us to read the Eight Corners to say if there's any scintilla, any theoretical, any metaphysical potentiality. That seems like where you're headed now. Maybe that's true. It just doesn't seem like you're accounting for the language here. So what Markell has asked the court to do, and not only said that you need— Let me put it to you this way. What is your best case for the construction you are urging in the context? Counsel opposite just says there's no cases anywhere, dot, dot, dot, construing it. But, I mean, what's the best case you're relying on to make the point? I mean, I heard your argument and you're relying on your brief, but, I mean, with limited time, what's the best case or cases you're relying on? And when we read those cases, we will absolutely agree with what you're saying. Well, there are no cases on point to the creditor exclusion, but there is an abundance of cases on the books, Guide 1, Pine Oaks, all that are cited on our briefing that say you cannot use any— you cannot contradict specific allegations in the pleadings. This pleading alleges that Solutions Capital was the sole lender of the junior loan, which means that MCG must be suing in some other capacity. And if I can give you one quick example, there just is not a case on point. I mean, the Bank of Louisiana case is a good example of how Markell could have drafted it to use the broad arising out of language that would pull in peripheral claims. This exclusion applies to loss on account of, meaning due to, meaning direct proximate cause has to be shown. I'm trying to view if one is a lender in any respect but also is a creditor. We don't know if MCG is a creditor or not. We don't know. The pleadings allege that they are an investor in Solutions Capital. I mean, it specifically alleges that MCG invested in Solutions Capital. So an investor is not a creditor, and the policy exclusion does not use the word investor. It uses the word creditor. And so that's the term that the court has to apply. You're quick on your feet. All right. All right. Thank you. All right, Mr. Cruz, you're the cleanup guy. Thank you, Your Honors. Number one, to respond to what opposing counsel was referring to, this is not a situation where there is a legal conclusion that they're an investor or, you know, whether they're an investor or a creditor. They allege facts specifically saying that they invested. And what is important, I think— By they, we're not talking to the insurance company. We're talking about these people who brought the lawsuit. MCG specifically states that it did not loan money because Solutions was the sole lender. Solutions did not assign any part of the debt to MCG. Those are specifically alleged. So then MCG alleges numerous times that it invested in Solutions, that it invested in the junior loan, that it invested in debt. Those are not legal characterizations. Those are facts saying, MCG, why are you here? They're here because they invested in the loan. They invested in the debt. They invested in Solutions. They were not a creditor. Counsel, it seems to me that the rules for interpreting the meaning of pleadings require us to look at the entire pleadings. So whatever an individual word may be in isolation, do you agree we look in the entire pleadings to figure out what the meaning of those words are? And that's—I'm not saying that gives up your case. You still may not get to where the district judge did. But I'm a little concerned about all of the Verbanks arguing that if the word invest appears somewhere, game over. You've got to figure out from the whole pleadings, correct, what the pleadings mean. Well, such as— You're asking me? No, Your Honor. I was going to try to give an example that I think might be helpful. We don't know how they invested. We know that they've alleged facts that they invested. Well, no, I understand that. But would you agree with my construct that when you're trying to interpret pleadings, you look at the entire pleadings and read them together to give them meaning? And do you say yea or nay to that? That's all I'm asking. Yes. And reading of the entire pleading here leaves no doubt that the sole lender was Solutions and that the loan wasn't assigned. So to make an assumption otherwise would be to ignore the facts. To take an origin of damages—well, they say 13.5, and that's the amount of the loan. Therefore, had to be somehow risen out of the loan. Well, that actually takes the exclusion and turns it upside down because that's not what the exclusion says. The exclusion says that people ought to be able to rely upon the language of the policy. If the language of the policy says claim by a creditor of the company in its capacity as such, then a suit by a non-creditor and admitted can't deny it that they didn't loan money to them and that the loan wasn't assigned to them, then they should have the right to be defended. And that's what we have here. We have a situation that specifically is not by a creditor. All right. All right. Thank you, sir. Thank you. We ask that the Court reverse the amendment. All right. Thanks to counsel on both sides for your briefing and argument. Assistance to the Court. This concludes the oral argument section of our Tuesday, and we will stand in recess until 9 a.m. tomorrow morning. Thank you.